UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOUIS PAGLIUCO and : | |
| 2284 CORPORATION : | CIVIL NO. |
| : | |
| VS. : | |
| : | |
| CITY OF BRIDGEPORT, : | |
| THOMAS E. GECEWICZ, : | |
| JOSEPH GANIM, : | |
| ROBERT SAPIRO and : | MAY 8, 2001 |
| JANE DOE, M.D. : | |

**AFFIDAVIT IN SUPPORT OF MOTION**
**FOR TEMPORARY INJUNCTION**

STATE OF CONNECTICUT    )
                        )    SS:    New Haven
COUNTY OF NEW HAVEN     )

LOUIS PAGLIUCO, having been duly sworn, states:

1. I am one of the plaintiffs in the captioned action.

2. I have read the factual allegations of the Complaint in this case and all of the factual allegations are true and accurate.

_____
LOUIS PAGLIUCO

Subscribed and sworn to before me this 8th day of May, 2001.


_____
Commissioner of the Superior Court

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOUIS PAGLIUCO and : | |
| 2284 CORPORATION : | CIVIL NO. |
| : | |
| VS. : | |
| : | |
| CITY OF BRIDGEPORT, : | |
| JOSEPH GANIM, : | |
| THOMAS E. GECEWICZ, : | |
| ROBERT SAPIRO and : | MAY 8, 2001 |
| JANE DOE, M.D. : | |

## **C O M P L A I N T**

1. This is an action to redress the deprivation of rights secured to the plaintiff by the Constitution and laws of the United States and the State of Connecticut. The defendants have unequally enforced the laws and regulations of the State of Connecticut and the City of Bridgeport against the plaintiffs, in an arbitrary and irrational manner and/or because the plaintiffs serve primarily African-American patrons, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

2. Jurisdiction of this court is invoked under the provisions of Sections 1331, 1343(3) and 1367(a) of Title 28 and Sections 1983 and 1988 of Title 42 of the United States Code.

3. During all times mentioned in this action, the plaintiff 2284 Corporation was a Connecticut corporation which owned and operated -- and still owns and operates -- a bar/cafe on Fairfield Avenue in Bridgeport, Connecticut, known by the name "Dangerous Curves".  During all times mentioned herein, the plaintiff Louis Pagliuco was an owner and officer of the plaintiff 2284 Corporation and managed and manages the said bar/cafe.

4. During all times mentioned herein, the defendant City of Bridgeport was a municipal corporation in the State of Connecticut and it employed the other defendants. During all such times, defendant Ganim was the Mayor of the City of Bridgeport. He is sued individually and in his official capacity.

5. During all times mentioned herein, the defendant Gecewicz was, and he is, the Director of Health for the defendant City of Bridgeport.  He is sued in both his individual capacity and his official capacity.  During all times mentioned herein, the defendant Jane Doe, M.D., was a physician employed by the defendant City of Bridgeport and acting jointly with and under the supervision of the defendant Gecewicz.  Her true identity is presently unknown to the plaintiffs.

6. During all times mentioned herein, the defendant Sapiro was a Sergeant in the Bridgeport Police Department, acting in his capacity as such.  He is sued only in his individual capacity. He was at all times mentioned herein the head of a

special squad of police officers reporting directly to defendant Ganim and called the "Mayor's Office Special Task Force".

    7.  During all times mentioned herein, the defendants acted jointly and in concert with each other.  Each defendant had the opportunity, the ability and the duty to protect the plaintiff from the unlawful actions of the other defendants but each defendant failed and refused to do so, thereby proximately causing the plaintiff to suffer the injuries hereinafter described.

    8.  During all times mentioned in this Complaint, the defendants were acting under color of law, that is, under color of the constitution, statutes, laws, charter, ordinances, rules, regulations, customs and usages of the State of Connecticut and the City of Bridgeport.

    9.  The plaintiff 2284 Corporation has been engaged since 1993 in the same business in which it is engaged today.

    10.  In approximately 1998-1999, however, the plaintiff's clientele changed from being predominantly caucasian to being predominantly African-American.

    11.  When the race of the majority of the plaintiff's customers became African-American, the defendants began a pattern and practice of unequal enforcement of the laws against the plaintiff in comparison with similarly situated businesses serving a predominantly caucasian clientele.

12. The said pattern and practice of disparate and discriminatory enforcement of the laws has included far more frequent police and health department inspections of the plaintiff's premises, far more rigorous enforcement of statutes and regulations, and far more severe penalties and other enforcement actions against the plaintiff's business than of and against other comparable businesses catering to a predominantly caucasian clientele. For example:

A. An establishment known by the name Black Rock and Blue, located 3/4 of a mile from the plaintiff's but serving a predominantly caucasian clientele, has never been raided by the defendants or their agents.

B. A bar known as The Avenue Cafe, located 3/4 of a mile from the plaintiff's establishment but catering to a predominantly caucasian clientele, has only very rarely been raided by the defendants or their agents.

C. A bar known as Black Rock Castle, located 1/2 mile from the plaintiff's establishment but serving a predominantly caucasian clientele, has never been raided by the defendants or their agents.

D. A bar known as Kossuth Club Cafe, located 1/2 mile from the plaintiff's establishment but serving a predominantly caucasian clientele, has never been raided by the defendants or their agents.

E. An establishment with a liquor license, known as Taco Loco and located 1/2 mile from the plaintiff's establishment but serving a predominantly caucasian clientele, has never been raided by the defendants or their agents.

F. A bar known as Rock and Roll Cafe, located 14 mile from the plaintiff's establishment but serving a predominantly caucasian clientele, has never been raided by the defendants or their agents.

G. An establishment serving alcoholic beverages and known as The Green Room, located 1/4 mile from the plaintiff's establishment but serving a predominantly caucasian clientele, has never been raided by the defendants or their agents.

H. A bar known as Good Times Cafe, located 1/4 mile from the plaintiff's establishment but serving a predominantly caucasian clientele, has never been raided by the defendants or their agents.

I. A Go-Go bar named Ruby's, located 150 yards from the plaintiff's establishment but serving a predominantly caucasian clientele, has only rarely been raided by the defendants or their agents.

J. A bar named Sol's Cafe, located 3/4 of a mile from the plaintiff's establishment but serving a predominantly caucasian clientele, has never been raided by the defendants or their agents.

K.  A bar named Murphy's Law Cafe, located 3/4 of a mile from the plaintiff's establishment but serving a predominantly caucasian clientele, has never been raided by the defendants or their agents.

L.  A bar and steakhouse named Tool House Restaurant, located 3/4 of a mile from the plaintiff's establishment but serving a predominantly caucasian clientele, has never been raided by the defendants or their agents.

M.  A bar named Captain Jax, located 3/4 of a mile from the plaintiff's establishment but serving a predominantly caucasian clientele, has never been raided by the defendants.

N.  The plaintiff's bar, which serves a predominantly African-American clientele, is constantly being raided by the defendants and their agents.

O.  Upon information and belief, the plaintiff's bar is the most frequently raided bar in the City of Bridgeport.

P.  The second, third, fourth and fifth most raided bars in the City of Bridgeport, which are respectively Keystone Cafe, Teddie's Cafe, Bishop's Corner and Club Innovation, all cater to a predominantly African-American clientele.

13.  On December 3, 1998, defendant Sapiro in writing urged the Connecticut Liquor Commission to concentrate law enforcement efforts on the plaintiff's business for the stated reason that "[t]his place is a HOLE!!!"

14. On November 25, 1998, defendant Sapiro led an "inspection" team of ten armed officers which conducted a raid of the plaintiff's premises because of what defendant Sapiro called "loitering, illegal parking [and] suspicious foot traffic in and around the Dangerous Curves Bar located on the corner of Fairfield and Hansen." Defendant Sapiro also insisted that the Fire Department send an inspector to conduct a further inspection of the premises despite the fact that there were no fire code violations on the premises. As a result, the plaintiff was forced to endure disruptive raids or inspections which damaged its business and frightened away customers.

15. On June 5, 1999, defendant Sapiro wrote to an agent of the Connecticut Department of Consumer Protection stating with regard to the plaintiff's business premises: "Let us know what else we can do about this place."

16. On December 23, 2000, defendant Gecewicz participated with defendant Jane Doe, M.D., and other officers and employees of defendant City of Bridgeport in a raid upon the plaintiff's premises.

17. At approximately 3:40 p.m. on January 4, 2001, more than a week after the said raid, defendants Gecewicz and Doe falsely and maliciously reported to the Connecticut Department of Children and Families that the plaintiff Pagliuco was endangering the morals, health and safety of his three-year-old son. They falsely and maliciously claimed that during their raid on December 23, 2000, the plaintiff's

little boy engaged them in conversations at Dangerous Curves in which he asked defendant Gecewicz what type of "broad" he wanted to go out with, whether he wanted her to have "little teats or big teats," whether he wanted a "babe," and whether he wanted her to have a "shaven bush" or a "full bush".  They further falsely and maliciously claimed that the child at that time stated that somedy he would be the manager of the business.

    18.  As a result, the plaintiff Pagliuco and his family were subjected to a detailed and intensive investigation by the Connecticut Department of Children and Families which completely exonerated them and concluded that the accusations of defendants Gecewicz and Doe were false.

    19.  As a further result, the plaintiff Pagliuco's little boy has undergone independent testing and evaluation by a licensed professional, at the expense of plaintiff Pagliuco, who also concluded that it was impossible for the false accusations of defendants Gecewicz and Doe to have been truthful.

    20.  In the manner described above, the defendants and each of them have jointly deprived the plaintiffs of equal protection of the laws in violation of the Fourteeneth Amendment to the United States Constitution and in violation of Article First, Sections 1 and 20, of the Connecticut Constitution.

    21.  In the manner described above, the defendants Gecewicz and Doe and each of them, have deprived the plaintiff Pagliuco of substantive due process of

law by engaging in conduct shocking to the conscience and in violation of the Fourteenth Amendment to the United States Constitution.

22. The conduct of defendants Gecewicz and Doe was extreme and outrageous and was designed and intended to cause the plaintiff Pagliuco to suffer, and in fact did cause the plaintiff Pagliuco to suffer, severe emotional distress.

23. The conduct of all the defendants has caused and is causing the plaintiffs to suffer economic loss.

24. The plaintiffs are suffering irreparable injury and will continue so to suffer unless the defendant City of Bridgeport is enjoined from continuing its pattern and program of unequally enforcing the laws and regulations of the City of Bridgeport and the State of Connecticut as hereinbefore described.

WHEREFORE, the plaintiffs claim judgment against the defendants and each of them, jointly and severally, for compensatory damages, punitive damages, attorney fees and costs, and a temporary and permanent injunction against the defendant City of Bridgeport and its agents, servants and employees, prohibiting them henceforth from unequally enforcing against the plaintiff the laws, rules, regulations and ordinances of the State of Connecticut and the City of Bridgeport.

**CLAIM FOR JURY TRIAL**

The plaintiffs claim trial by jury.

                        THE PLAINTIFFS

                BY:_____
                      JOHN R. WILLIAMS
                      Federal Bar No. ct00215
                      Williams and Pattis, LLC
                      51 Elm Street
                      New Haven, CT 06510
                      TELEPHONE:  203.562.9931
                      FAX:  203.776.9494
                      E-MAIL:  jrw@johnrwilliams.com
                      Their Attorney